IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 12-cv-01040-RBJ

SHELLY JOHNSON,

    Plaintiff,

v.

CAROLYN W. COLVIN[1], Acting Commissioner of Social Security,

    Defendant.

## ORDER

The Court here reviews the Commissioner's denial of Shelly Johnson's application for disability benefits under Titles II and XVI of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). This dispute became ripe for decision upon the filing of plaintiff's Reply Brief on September 28, 2012, and it was reassigned to this Court on October 1, 2012. The Court apologizes to both parties for the delay in reviewing the case.

**Facts**

Procedural Background

On June 25, 2009, Ms. Johnson filed a Title II application for a period of disability and disability insurance benefits with an onset date of February 15, 2009. R. at 12. Her application was initially denied on February 1, 2010. *Id.* She then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 16, 2011, with Ms. Johnson and her

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, and thus her name is substituted for that of Michael J. Astrue as the defendant in this suit. Fed.R.Civ.P. 25(d)(1). By virtue of the last sentence of 42 U.S.C. § 405(g), no further action needs to be taken to continue this lawsuit.

attorney appearing in Durango, Colorado. *Id.* Reva D. Payne, a vocational expert ("VE"), also appeared at the hearing. *Id.*

On August 1, 2011, ALJ William Musseman issued a decision denying Ms. Johnson social security benefits. R. at 9–22. Ms. Johnson pursued an internal appeal and provided additional legal briefing. R. at 1–6. The Appeals Council denied her request to review the ALJ's decision on February 23, 2012. R. at 1. The present case was filed on April 18, 2012.

Ms. Johnson's Relevant Medical History

Ms. Johnson was born on January 16, 1957, and was 52 years old on her onset date in February 2009. R. at 226. Ms. Johnson's relevant medical history contains examinations and treatments beginning in February 2009 around the time she filed for disability due generally to pain in her neck, back, wrist, legs, and fingers. R. at 187.

Dr. Feinhals. Ms. Johnson saw a chiropractor, Andrew Feinhals, DC, on February 9, 2009, and received five chiropractic adjustments between that date and February 16, 2009. She returned to him on May 12, 2011 for follow-up x-rays; and in a letter of that date Dr. Feinhals provided a record of Ms. Johnson's five treatment visits with him in February 2009. R. at 201–02. Dr. Feinhals also completed a "medical source statement" for Ms. Johnson on June 9, 2011. R. at 223-24.

His impression was that Ms. Johnson had a "[v]ertebral subluxation complex of multiple cervical, thoracic and lumbar vertebra with attendant cervicalgia, thoracalgia and lumbalsia" as well as a "left sacroiliac subluxation." R. at 202. He opined that she can occasionally lift /carry up to five pounds; stand/walk or sit for half an hour at a time, up to four hours per day; occasionally bend/stoop, squat, climb stairs and ladders, and reach; but never crawl or kneel. R. at 223. Ms. Johnson would be required to recline more than once a day for relief, and she would

not be able to use her hands for repetitive action involving simple grasping or fine manipulation. *Id.* Ms. Johnson's pain would cause her to be unable to work six or more days per month, and she had a "compromise of the peripheral nervous system due to significant degenerative disc disease in several areas of the spine." R. at 224. Dr. Feinhals stated that her pain would significantly affect her ability to perform activities on a sustained and regular basis. *Id.*

Dr. Campbell. Velma Campbell, M.D., MPH conducted a consultative examination on September 29, 2009. R. at 187–89. She diagnosed Ms. Johnson with chronic low back and neck pain, bilateral wrist swelling, bilateral shoulder and knee pain, and "psychological factors associated with medical conditions, altered functional status." R. at 189. Dr. Campbell found physical limitations to standing and walking to less than 6 hours a day; "postural activities such as bending, stooping, squatting, and kneeling limited to less than 3 hours a day;" reaching overhead limited to less than 3 hours a day; lifting and carrying limited to 20 pounds for less than 2 hours a day, and to 10 pounds for less than 4 hours a day. *Id.* Dr. Campbell also noted that Ms. Johnson "is independent in activities of daily living and household chores" and was "using non-pharmaceutical measures to manage the pain." *Id.* Dr. Campbell found no indication of cognitive deficits, and psychological factors only so far as they contribute "to the functional status such as coping with physical limitations and chronic pain." *Id.*

Dr. Alford. William P. Alford, M.D., a doctor at the Mercy Medical Center, apparently ordered x-rays of Ms. Johnson's right wrist, back, and right knee on January 18, 2010. R. at 190–92. The right wrist X-ray showed no abnormality and normal alignment with no degenerative change, osteoporosis, or erosions. R. at 190. The back X-ray identified no acute pathology but showed prominent disc space degeneration at L3-L4; lower lumber facet degenerative changes, most severely at L4-L5; and mild lumbar scoliosis. R. at 191. The right

3

knee X-ray should "a suggestion of slight medial join space narrowing" but was otherwise normal in appearance. R. at 192.

P.A. Gruver. On June 7, 2010, Ms. Johnson was treated by Robert Gruver, P.A., for lower back and hip pain and weakness in her right wrist. R. at 196–97. Mr. Gruver noted a positive straight leg raise on the right, but otherwise he did not note any abnormalities and noted a full range of motion of the cervical and lumbar spine. R. at 196.

Dr. Kitson. Finally, on October 12, 2012, Ms. Johnson was seen by Steven Kitson, M.D. at Axis Health in Durango, seeking treatment for anxiety and depression. R. at 207–10. Dr. Kitson diagnosed Ms. Johnson with major depressive disorder, recurrent, moderate, and pain disorder associated with both psychological factors and a general medical condition. R. at 210. He prescribed Prozac for Ms. Johnson. R. at 211.

ALJ's Decision

The ALJ followed the five-step evaluation process provided at 20 C.F.R. § 404.1520(a)(4) to determine whether Ms. Johnson is disabled for Social Security. At step one, the ALJ found that Ms. Johnson meets the insured status requirements of the Social Security Act through December 31, 2013. R. at 14. The ALJ also found that Ms. Johnson had not engaged in substantial gainful activity from the alleged onset date of February 15, 2009. *Id*.

At step two, the ALJ found Ms. Johnson had the severe impairments of chronic back pain and degenerative disease of lumbar and cervical spine. *Id*. However, the ALJ found that Ms. Johnson's claimed impairments of depression and anxiety did not meet the duration requirement of twelve months and were thus "nonsevere medically determinable impairments." *Id*. The ALJ noted that Ms. Johnson was not receiving ongoing treatment for depression and anxiety prior to September 2010 and had no documented history of formal psychiatric treatment or

hospitalization prior to 2010. *Id.* The first diagnosis of any mental condition in the record was on September 23, 2010. R. at 207–22.

At step three, the ALJ determined that the Ms. Johnson "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." R. at 15. The ALJ specifically noted that the evidence did not establish nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis, nor did the evidence establish major dysfunction of a joint. *Id.*

Step four requires the ALJ to assess Ms. Johnson's residual functional capacity or "RFC" in light of the medical impairments and to determine whether she is capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). At this step, the ALJ reviewed Ms. Johnson's medical records, including treatment records that the ALJ characterized as "sparse, at best." R. at 17. The ALJ found that Ms. Johnson's testimony lacked credibility but, despite this, considered and incorporated her "allegations of severe pain and difficulty with concentration" into the RFC finding. *Id.*

As for the medical opinion evidence, the ALJ assigned "little weight to Dr. Campbell's opinion as the restrictions she imposed are based on a conclusion that is refuted by appropriate diagnostic testing" and is "internally inconsistent." *Id.* ALJ Musseman also stated that "although Dr. Feinhals' medical findings regarding the claimant's impairments are given some weight, his opinion relating to the claimant's physical limitations is not warranted any weight as a chiropractor is a nonacceptable medical source under the Social Security Act." *Id.* The ALJ noted that "[c]hiropractors are not identified as acceptable medical sources, but 'other' sources, and the undersigned must rely on the opinions of the treating and consulting medical specialists who examined the claimant." *Id.*

The ALJ thus concluded that Ms. Johnson had the residual functional capacity to perform light work and could "occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; . . . stand and walk for 6 hours in an 8-hour workday; and . . . sit, with normal breaks, for about 6 hours in an 8-hour workday." R. at 15.  Furthermore, she is "limited to occasionally bending, squatting, kneeling, and climbing stairs, ramps, scaffolds, and ladders," and she "is to avoid over chest level work and foot or leg control operation." *Id.*  Ms. Johnson is lastly "limited to no complex tasks and can perform only jobs that are [specific vocational preparation (SVP) rating of] 3 or less." *Id.*

Ms. Johnson had previously worked as a secretary, bartender, waitress, and crew manager.  R. at 18.  The vocational expert ("VE") at the hearing testified that, based on hypotheticals reflecting Ms. Johnson's testimony, she would not be able to perform her past relevant work.  R. at 46-47.  The ALJ accordingly found that Ms. Johnson is unable to perform any past relevant work.  R. at 18.

At step five, the ALJ, after considering Ms. Johnson's age, education, work experience, and RFC, found that she is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  *Id*.  In making this determination, the ALJ relied on testimony at the hearing by the VE.  R. at 18–19.  The VE testified that an individual with Ms. Johnson's age, education, work experience, and RFC would be able to perform the requirements of jobs such as laundry clerk, apparel-rental clerk, and school bus monitor.  R. at 47.  *See also* R. at 48-52.  The ALJ thus denied Ms. Johnson's claim for disability benefits.  R. at 19.

**Standard of Review**

This appeal is based upon the administrative record and the briefs submitted by the parties.  When reviewing a final decision by the Commissioner, the role of the district court is to

examine the record and determine whether it "contains substantial evidence to support the [Commissioner's] decision and whether the [Commissioner] applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998) (citing *Hamilton v. Secretary of Health & Human Servs.*, 961 F.2d 1495, 1497 (10th Cir. 1992)).  A decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988).  More than a scintilla, but less than preponderance is required.  *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004).  Although the evidence may support two inconsistent conclusions, that "does not prevent an administrative agency's finding from being supported by substantial evidence."  *Id*.  The Court cannot "reweigh the evidence or substitute [its] judgment for that of the agency."  *White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001).

### Conclusions

Ms. Johnson raises three issues: (1) the ALJ erred in giving little weight to consultative examining evaluator Dr. Campbell's opinion; (2) the ALJ failed to properly weigh the medical source opinion of treating chiropractor Dr. Feinhals; and (3) the ALJ's RFC finding is not supported by substantial evidence.

### ALJ's Consideration of Dr. Campbell's and Dr. Feinhals's Respective Opinions

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) (citing 20 C.F.R. § 401.1527(d)).  The opinion of a treating physician is given controlling weight "as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* (citing 20 C.F.R. §

401.1527(d)(2)). Even if the ALJ does not give "controlling weight" to the opinion of a treating physician, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

Here, the parties do not dispute that Ms. Johnson did not have a treating medical source available for the ALJ's review. "Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . , as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us." 20 C.F.R. § 404.1527(f)(2)(ii).[2]

Ms. Johnson argues that the ALJ failed to properly weigh the opinions of both the consultative examining evaluator Dr. Campbell and the medical source opinion of treating chiropractor Dr. Feinhals.

As to Dr. Campbell, the ALJ assigned "little weight" to her opinion because "the restrictions she imposed are based on a conclusion that is refuted by appropriate diagnostic testing" and is "internally inconsistent." R. at 17; *see also* R. at 187–89. Ms. Johnson argues that the ALJ did "not discuss what diagnostic testing refuted Dr. Campbell's impressions and diagnosis and also does not discuss in what respect Dr. Campbell's assessment is 'internally inconsistent.'" [#14] at 20. The Court essentially disagrees.

The ALJ stated that he discounted Dr. Campbell's findings because

> while the January 18, 2010 X-ray test of the claimant's right wrist revealed no significant finding, the X-ray of the lumbar spine was also normal except for a prominent degenerative narrowing of the L3-L4 disc space and bilateral lower lumbar facet severe degenerative changes at L4-L6. Yet the radiographical imaging ruled out fracture or acute pathology. In addition, the X-ray test results

---

[2] Current version redesignated as 20 C.F.R. §404.1527(e)(2)(ii) by 77 F.R. 10651-01, at 10656 (February 23, 2012).

>of the claimant's right knee revealed slight medial join space narrowing but ruled out fracture, malallignment [sic], or joint effusion.

R. at 16 (citing January 18, 2010 radiology report, medical record Exhibit 2F, R. at 190–92). Furthermore, the ALJ noted that Dr. Campbell's physical examination observations were "generally normal," citing the normal gait, full strength and range of motion in Ms. Johnson's lower extremities, and only "mildly positive" Tinel's and Phalen's signs at her right wrist. R. at 16–17 (citing R. at 187–89).

Ms. Johnson is correct that the Commissioner, on appeal, proffers additional reasons to discount Dr. Campbell's opinion, and that these post-hoc rationales are not acceptable on appeal. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Nonetheless, the Court finds that the ALJ's stated explanations for according little weight to Dr. Campbell's opinion are supported by the record and are legally sufficient. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *see also Raymond v. Astrue*, 621 F.3d 1269, 1272 & n. 1 (10th Cir. 2009) (Despite post-hoc reasoning by a magistrate judge, the Circuit's "review of the ALJ's decision reveals that it is fully supported on its own terms . . . .").

Ms. Johnson additionally challenges the ALJ's consideration of Dr. Feinhals' opinion. The ALJ wrote that "although Dr. Feinhals' medical findings regarding the claimant's impairments are given some weight, his opinion relating to the claimant's physical limitations is not warranted any weight as a chiropractor is a nonacceptable medical source under the Social Security Act, as amended." R. at 17. Citing 20 C.F.R. 404.1513 and 416.913, the ALJ stated that "reports about an impairment must come from acceptable medical sources," and chiropractors that are classified as "other sources" therefore cannot inform the ALJ's understanding of how an impairment affects an individual's ability to work. R. at 17.

9

Ms. Johnson does not dispute that "[m]edical opinions are statements from physicians and psychologists or other 'acceptable medical sources' that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-3p, 2006 WL 2329939, at *2 (Aug. 9, 2006). She argues, however, that the ALJ misstated and misapplied the law because opinions of "other" medical sources such as Dr. Feinhals are still relevant to the questions of "severity" and "functionality." [#16] at 6–7.

The Court agrees with Ms. Johnson that under SSR 06-3p, at *4, Dr. Feinhals' opinion can be considered using the same factors in 20 C.F.R. § 404.1527(c), and that the Tenth Circuit has endorsed the consideration of a chiropractor's opinion as to severity and functionality. *See Carpenter v. Astrue*, 537 F.3d 1264, 1267–68 (10th Cir. 2008). Ultimately, however, the Commissioner is correct that neither the regulations nor the Tenth Circuit *require* that the ALJ give a certain weight to an opinion by a chiropractor or other source. *See id.*; 20 C.F.R. § 404.1513(d) ("In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we *may* also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work.") (emphasis added).

The Court agrees with the Commissioner that the ALJ's "written decision reflects that the ALJ considered Dr. Feinhals's examination notes, physical capacity evaluation and undated summary of treatment." [#15] at 17. The ALJ specifically stated that he accorded "some weight" to Dr. Feinhals's medical findings as to Ms. Johnson's impairments. R. at 17.; *cf. Carpenter*, 537 F.3d at 1268 (chiropractor's opinion is "relevant" and ALJ may not disregard the "serious problems" set out in a chiropractor's opinion "simply because he is a chiropractor");

*Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (ALJ's decision failed to discuss at all the weight given to the treating nonacceptable medical source's opinion).

ALJ's RFC Finding

Ms. Johnson also challenges the ALJ's RFC finding as not being supported by substantial evidence. Ms. Johnson unfortunately had a "sparse" medical treatment history, apparently due at least in part to financial considerations; and the paucity of medical evidence probably contributed to the negative determination. *See, e.g.*, R. at 18 ("The sparse treatment notes and radio graphical imaging in the record do not support the claimant's allegations."). However, the ALJ could only go by what was available in the record.

Ms. Johnson contends that by disregarding Dr. Feinhals's opinion, the RFC could not have been based on any medical evidence in the record. [#14] at 22. As discussed above, this Court finds no error in the ALJ's consideration of Dr. Feinhals's opinion. She also maintains that the RFC cannot be supported where the ALJ instructed the VE that she should consider the hypothetical of a person limited to "no complex tasks defined as SVP 3 or less." R. at 46. She also appears to argue that instead of the SVP level 3 the VE should have relied on Ms. Johnson's general educational development (GED) level. R. at 17; *see* [#14] at 24. However, she provides no authority or reasoning supporting either argument.

Ms. Johnson cites a Tenth Circuit case, *Hackett v. Barnhard*, 395 F.3d 1168, 1176 (10th Cir. 2005), to support her argument that two of the jobs listed by the VE exceed a limitation to "simple, routine" tasks. [#14] at 24. However, there would be error only if the ALJ had limited Ms. Johnson to "simple, routine" tasks. *See Hackett*, 395 F.3d at 1176. He did not. Rather, he limited her to noncomplex tasks with a SVP 3 or less. R. at 17, 46.

In sum, this Court concludes that, while the evidence could support more than one conclusion, there is "substantial evidence" in the record that supports the ALJ's determination that Ms. Johnson is capable of making a successful adjustment to other work that exists in significant numbers in the national economy and is therefore not disabled. As indicated above, this Court cannot reweigh the evidence or substitute its judgment for that of the agency.

**Order**

Accordingly, the decision of the Commissioner is AFFIRMED. The Court does wish Ms. Johnson well and hopes that her future course will be brighter.

DATED this 19th day of September, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge